IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

ANDY JACK WILSON,            )
                             )
         Plaintiff,          )
                             )
                             )   CIV-14-779-W
v.                           )
                             )
CORRECTIONS CORPORATION OF   )
     AMERICA, INC., et al.,  )
                             )
         Defendants.         )

SECOND SUPPLEMENTAL REPORT AND RECOMMENDATION

On July 23, 2014, Plaintiff, a state prisoner appearing with counsel, filed a Complaint in this civil rights action pursuant to 42 U.S.C. § 1983. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B). Before the Court is Defendants' motion to dismiss, construed as a motion for summary judgment, on the basis of Plaintiff's failure to exhaust available administrative remedies as required by 42 U.S.C. § 1997e(a). Plaintiff has responded to the motion and filed a cross-motion for summary judgment on the issue of exhaustion of administrative remedies, asserting that Plaintiff's ability to exhaust his administrative remedies was thwarted by prison officials. For the following reasons, it is recommended that Defendants' motion construed as a motion for summary judgment on the basis of failure to exhaust available administrative remedies be denied and that Plaintiff's cross-motion for summary

judgment on the issue of exhaustion of administrative remedies be granted.

Plaintiff is incarcerated serving a sentence of life imprisonment without parole for a first degree murder conviction. Plaintiff alleges in his Complaint that on November 7, 2012, Defendants Worsham and Barneck, prison officials at the Davis Correctional Facility ("DCF") in Holdenville, Oklahoma, where he was then incarcerated, fired shells containing chemical agents into his cell, despite the fact that Plaintiff and his cellmate were at that time "'passed out' and unresponsive to verbal commands." Complaint, at 1-2. Plaintiff alleges that one of the shells hit Plaintiff in the head, causing serious injuries, including a fractured skull, traumatic brain injury, and severe facial and ocular injuries.

Plaintiff alleges that Defendants Worsham and Barneck were acting upon the directive of Defendant Rankins, the Commander of the Special Operations Response Team ("SORT") at DCF, to fire the shells containing chemical agents into Plaintiff's cell. Plaintiff also alleges that Defendant Rankins had obtained the approval of Defendant Wilkinson, the Warden of DCF, to fire the shells containing chemical agents into Plaintiff's cell. In count one of the Complaint, Plaintiff seeks compensatory damages for constitutional violations stemming from this incident, including excessive force, deliberate indifference to Plaintiff's health and safety, and failure to train and supervise.[1] In count five of the Complaint, Plaintiff seeks compensatory damages for Defendant Corrections Corporation of America's alleged

---

[1]Although the Complaint included additional supplemental state tort claims, Plaintiff filed a Stipulation of Dismissal with Prejudice on July 10, 2015 (Doc. # 37) in which he dismissed with prejudice all of his supplemental tort claims asserted in grounds two, three, and four of the Complaint.

deliberate indifference to Plaintiff's serious medical needs. Plaintiff also seeks punitive damages.

On October 17, 2014, Defendants Corrections Corporation of America, Inc. ("CCA"), the private entity that operates DCF, and DCF officials Wilkinson, Rankins, Worsham, and Barneck moved to dismiss the claims in counts one and five under Fed. R. Civ. P. 12(b)(6) and 42 U.S.C. § 1997e(a). This motion has been converted by the Court to one seeking summary judgment pursuant to Fed. R. Civ. P. 56. Following a period of discovery, Plaintiff has responded to the motion, and Defendants have filed a reply to the response. Plaintiff has also filed a cross-motion for summary judgment, to which Defendants have responded and Plaintiff has replied.

Exhaustion of Administrative Remedies as Required by 42 U.S.C. § 1997e(a)

Defendants move for summary judgment on the ground that Plaintiff has failed to exhaust available administrative remedies with respect to his 42 U.S.C. § 1983 claims alleged in the Complaint. The Prison Litigation Reform Act ("PLRA"), enacted in 1996, requires a prisoner to exhaust his administrative remedies prior to filing a lawsuit in federal court challenging prison conditions under 42 U.S.C. § 1983 or any other Federal law. 42 U.S.C. § 1997e(a). "[E]xhaustion requirements are designed to ... give the agency a fair and full opportunity to adjudicate their claims" before the plaintiff proceeds to file an action in federal court. Woodford v. Ngo, 548 U.S. 81, 90 (2006).

This mandatory exhaustion requirement, see Jones v. Bock, 549 U.S. 199, 211 (2007), applies "to all inmate suits about prison life, whether they involve general circumstances or

3

particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 524, 532 (2002). To properly exhaust administrative remedies, a plaintiff must "us[e] all steps that the agency holds out, and [do] so *properly* (so that the agency addresses the issues on the merits)," including "compliance with an agency's deadlines and other critical procedural rules." Woodford, 548 U.S. at 90 (quotation and citation omitted). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim." Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002).

Having asserted the affirmative defense of failure to exhaust administrative remedies, Defendants bear the burden of proof. See Jones v. Bock, 549 U.S. 199, 215-216 (2007)(holding failure to exhaust administrative remedies is affirmative defense); Roberts v. Barreras, 484 F.3d 1236, 1241 (10th Cir. 2007)("We . . . hold that the burden of proof for the exhaustion of administrative remedies in a suit governed by the PLRA lies with the defendant."). Defendants must therefore demonstrate the absence of a disputed material fact on the issue of exhaustion. See Hutchinson v. Pfeil, 105 F.3d 562, 564 (10th Cir. 1997).

Plaintiff contends that he should be excused from the exhaustion requirement because his administrative remedies were not available due to the actions or inactions of prison officials. See Tuckel v. Grover, 660 F.3d 1249, 1252 (10th Cir. 2011)(holding that exhaustion requirement may be excused and remedies deemed unavailable if "prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of the administrative remedy")(brackets and internal quotation marks omitted).

4

Grievance Policy

The procedure for exhausting administrative remedies for Oklahoma inmates, including inmates like Plaintiff incarcerated in private prisons, is set forth in the Oklahoma Department of Corrections ("ODOC") Policy OP-090124. Under this administrative procedure in effect during the relevant time period, the prisoner must first attempt to informally resolve the matter with the appropriate staff member within three days of the incident. See Defendants' Motion, Ex. 2 (OP-090124, eff. Jan. 29, 2013), at 7. If that attempt is unsuccessful, the inmate must submit a Request to Staff ("RTS") addressed to the appropriate staff member within seven days of the incident. See id. at 7-8. The assigned staff member will respond in writing to the RTS within ten working days of receipt. Id. at 8.

If there has been no response to an RTS within 30 days of submission, the inmate may file a grievance to the reviewing authority with "evidence of a copy of the log maintained by the law library supervisor that the [RTS] had been filed and no answer was received. The grievance may assert only the issue of the lack of response to the [RTS]." Id. at 8.

If the inmate is not satisfied with the response to his RTS, the inmate may submit a grievance with a copy of the RTS used in the informal resolution process to the reviewing authority within fifteen days of the incident or of the staff's response to his RTS, whichever is later. Id. at 8-9. The grievance must be submitted to the reviewing authority or the facility correctional health services administrator ("CHSA"), "whichever is appropriate, where the alleged incident occurred." Id. at 9.

If the inmate remains dissatisfied with the result of the grievance, the inmate may

appeal to the ODOC administrative review authority ("ARA") or, where appropriate, the chief medical officer ("CMO") within fifteen days of the reviewing authority's grievance response. See id. at 12-13.

After this step, the administrative procedure would be completed. Id. at 23. See Thomas v. Parker, 609 F.3d 1114, 1117 (10th Cir. 2010)("The ODOC grievance process has a requirement of informal consultation with staff, then three written steps: a Request to Staff form, a formal grievance, and an appeal to the administrative review authority.").

Uncontroverted Facts

Considering the pleadings and evidentiary documents presented by the parties, the following material facts are uncontroverted:

1. On November 7, 2012, Plaintiff was confined by ODOC at DCF, a private prison which houses Oklahoma inmates.

2. DCF is operated by CCA, a private entity that houses Oklahoma inmates pursuant to a contract with ODOC.

3. Defendants Wilkinson, Rankins, Worsham, and Barneck are employees of CCA.

4. On November 7, 2012, Plaintiff and his cellmate failed to respond to verbal commands issued by DCF staff and were observed by prison staff to be unresponsive in their cell.

5. A SORT went to the cell occupied by Plaintiff and his cellmate for a routine search and extraction. The SORT fired an ALS 6227 OC Powder Blast Dispersion Projectile (37 mm) into the cell, causing a laceration and injury to Plaintiff's head and face. Plaintiff's Response (Doc. # 36), Exs. 11, 27.

6

6. Following the incident, Plaintiff was transported to Holdenville General Hospital on November 7, 2012, and later to the OU Medical Center. The examining doctor at the OU Medical Center noted that Plaintiff "admits to marijuana use and urine drug screen [was] positive for multiple substances including methamphetamines and marijuana." Defendants' Response (Doc. # 40), Ex. 3, at 2. The doctor noted that a CT scan of Plaintiff's face showed a "minimally displaced right frontal bone fracture with extension into the right frontal sinus." Id. at 3.

7. Plaintiff was transferred to the Lindsay Memorial Hospital on November 8, 2012. Plaintiff's Response (Doc. # 36), Ex. 4. Upon his discharge four days later, Plaintiff was housed in DCF's medical unit on November 12 - 20, 2012.

8. On November 14, 2012, Plaintiff was examined in DCF's medical unit by ARNP Denise Castro. Ms. Castro noted that Plaintiff complained of a headache over the right temple and pain in his right eye and that according to his medical records he complained of the same things during his recent hospitalizations. He was "alert [and] answers questions appropriately" but "does not remember how he was injured." Defendants' Response (Doc. # 40), Ex. 3, at 5.

9. DCF Assistant Warden for Security Operations Yates met with Plaintiff in the DCF medical unit on November 14, 2012. During this meeting, Officer Yates informed Plaintiff how he had been injured during the November 7, 2012 incident. At Plaintiff's request, Officer Yates arranged a visit with Plaintiff's mother that took place on November 20, 2012, and also arranged for Plaintiff to shower, and the shower was accomplished on November

16, 2012. Defendants' Response (Doc. # 40), Ex. 5 (Yates Affidavit).

10. On January 10, 2013, Plaintiff was transferred by ODOC from DCF to Mack Alford Correctional Center ("MACC"). Defendants' Motion (Doc. # 14), Ex. 1 (Consolidated Record Card).

11. On May 23, 2013, Plaintiff was transferred by ODOC from MACC to Cimarron Correctional Facility ("CCF"), a private prison. Defendants' Motion (Doc. # 14), Ex. 1 (Consolidated Record Card).

12. On October 15, 2013, Plaintiff submitted a RTS to Defendant DCF Warden Wilkinson. In this RTS, Plaintiff stated: "On 11/7/12 I was assulted [sic] by several staff and excessive force was used. I was shot in the head [with] the 37mm cannon. UM Rankins gave order for c/m Worshan [sic] and Sgt. Barneck fired multiple shots into my cell . . . as I slept. I was hit in head and suffered a severe brain [and] eye injury. I was told I would receive surgery by A. W. Yates." Defendants' Motion (Doc. # 14), Ex. 5, at 2. As requested relief, Plaintiff stated: "I need my medical as promised. And I'm seeking compensation for my brain injury. Please help me to exhaust my admin. remedies." Id. This RTS was received at DCF on October 23, 2013, and logged by DCF Administrative Clerk Tara Morgan as RTS No. 2013-9943. Defendants' Motion (Doc. # 14), Ex. 4 (Morgan Affidavit).

13. In a "response" dated October 30, 2013, Warden Wilkinson asked: "What medical are you referring to?" Defendants' Motion (Doc. # 14), Ex. 5, at 2. The "response" was mailed to Plaintiff at CCF on November 6, 2013. Defendants' Motion (Doc. # 14), Ex. 4 (Morgan Affidavit). There is no evidence that Plaintiff received this "response."

14. Plaintiff submitted an Offender Grievance Report Form dated November 26, 2013, to Defendant Warden Wilkinson at DCF. Defendants' Motion (Doc. # 14), Ex. 5, at 4-6. The grievance was received at DCF on December 3, 2013. Id. In this grievance, Plaintiff stated: "I sent a RTS to Warden Wilkinson concerning an incident at DCF on 10/16/13 [and] I have not received an answer." The relief he requested was for Warden Wilkinson: "To respond to my request for help and give me what I need stated in RTS. I am seeking compensation [and] need his response to move forward." Id. DCF Grievance Coordinator Terry Underwood stamped the grievance as received on December 3, 2013, and logged the grievance.

15. The grievance was returned to Plaintiff unanswered. Defendants' Motion (Doc. # 14), Ex. 5, at 7-8. In a memorandum attached to the grievance and dated December 16, 2013, Plaintiff was advised: "You did not provide proof that a RTS was sent to Warden Wilkinson. You need to send a RTS to Tara Morgan, Admin Clerk and ask her for the RTS database log number of the RTS you sent the Warden. Then you can file a grievance asking for the RTS to Warden Wilkinson be answered." Id. Plaintiff was also advised that he could resubmit the grievance within 10 days of receipt of the memorandum "[w]ith the proof of RTS submission." Id.

16. Plaintiff received the unanswered grievance and memorandum on December 20, 2013. Defendants' Motion (Doc. # 14), Ex. 5, at 9.

17. On December 24, 2013, Plaintiff submitted an Offender Request to a law library clerk at CCF. In this request, Plaintiff stated: "I turned in a RTS through you to Warden

Wilkinson DCF on 10-18-13. I need the log number from the RTS database please help me get for my on going grievance issues." In response to this request, Plaintiff was advised that "DCF has their own log on their own network which I don't have access to. You will have to contact (via a RTS) Ms. Tara Morgan, Admin. Clerk at DCF, and ask her for the RTS database log number of the RTS you sent to Warden Wilkinson." Plaintiff's Response (Doc. # 36), Ex. 41 (labeled Exhibit 44)

18. On December 24, 2013, Plaintiff submitted an Offender Request form to the Grievance Coordinator at CCF. In this Offender Request, Plaintiff stated: "I received an answer to my grievance from Warden Wilkinson. He said I need the log number for the request I sent him through the law library on 10/18/13. Could you please get it from the RTS database or tell me how to. I only have ten days." Defendants' Motion (Doc. # 14), Ex. 5, at 20.

19. The CCF Grievance Coordinator responded to the Offender Request on December 30, 2013, and stated: "You will have to get in contact with the Administration Clerk over at Davis CF because unfortunately I do no have access to their RTS log. I only have access to ours here at CCF. Her name is Tara Morgan and you need to send a Request to Staff that is completed correctly per OP-090124 and ask her for the RTS database log number of the RTS you sent to Warden Wilkinson. Be specific as to the date you originally submitted it as well." Id.

20. On December 27, 2013, Plaintiff submitted an Offender Request form to the CCF Mailroom. In this request, Plaintiff stated: "I mailed a RTS to Warden Wilkinson at DCF through the law library between 10/15/13 and 10/17/13. I also mailed it privileged mail. I

need to know date it went out and the RTS tracking #." CCF Mailroom Supervisor Jester responded on December 30, 2013, and stated "Mail to the Warden at DCF is not classified as privileged. It was not logged, but if you sent it here to the mailroom to be mailed, it went out. We are not holding it." Defendants' Motion (Doc. # 14), Ex. 5, at 21.

21. Plaintiff submitted a RTS dated December 24, 2013, to Tara Morgan. The envelope containing the RTS was post-marked on December 31, 2013. Defendants' Motion (Doc. #14), Ex. 4 (Morgan Affidavit); Ex. 5, at 11-12. Ms. Morgan received the RTS on January 2, 2014, and stamped the RTS as received by her on that date. Id.

22. On January 7, 2014, Ms. Morgan responded to the RTS and included with the response a copy of the previous RTS numbered 2013-9943 showing Warden Wilkinson's response. The RTS log number was noted at the top of this RTS. Id.

23. In a grievance apparently backdated by Plaintiff to November 26, 2013, Plaintiff submitted another Offender Grievance Report Form to the Grievance Coordinator at DCF. Plaintiff stated in this grievance that he had complied with the previous directive and sent a RTS to Ms. Morgan but had not received a response to his RTS. Defendants' Motion (Doc. # 14), Ex. 5, at 13-14. The envelope in which he mailed the Offender Grievance Report Form bears a postmarked date of January 4, 2014. Id. at 15. The DCF Grievance Coordinator stamped the Offender Grievance Report Form as received at DCF on January 6, 2014. Id. Included with this second grievance was a copy of Plaintiff's 10/15/13 RTS to Defendant Warden Wilkinson, but it did not contain Warden Wilkinson's response or the database log number for the RTS. Id. at 16.

24. DCF Grievance Coordinator Underwood returned the Offender Grievance Report Form to Plaintiff unanswered. DCF Grievance Coordinator Underwood also included a memorandum dated January 8, 2014, in which Ms. Underwood stated: "You were told to provide proof that a RTS was sent to Warden Wilkinson by sending a RTS to Tara Morgan and obtaining the database log number of the RTS you sent the Warden. You have not done this. You turned in your grievance again without evidence of submitting the 'Request to Staff'" and "[d]ue to your continued failure to submit a properly filed grievance (see 090124), you are now OUT OF TIME." Defendants' Motion (Doc. # 14), Ex. 5, at 22-23.

25. Plaintiff received the unanswered grievance and memorandum at CCF on January 10, 2014. Defendants' Motion (Doc. # 14), Ex. 5, at 24.

26. Plaintiff submitted a grievance appeal to the ODOC Administrative Review Authority ("ARA") dated March 11, 2014. The envelope containing the grievance appeal bears a postmarked date of March 13, 2014. The ARA stamped the appeal as received by the ARA on March 17, 2014. Defendants' Motion (Doc. # 14), Ex. 5, at 26-28.

27. The grievance appeal was returned to Plaintiff unanswered on March 17, 2014, by ODOC ARA Director's Designee Knutson. In the memorandum return, Mr. Knutson noted the grievance appeal was "[o]ut of time from the date of facility head response." Defendants' Motion (Doc. # 14), Ex. 5, at 29.

28. Plaintiff submitted a Request to Director to Submit a Misconduct/Grievance Appeal Out of Time dated April 16, 2014. The envelope containing the Request bears a postmarked date of April 30, 2014. The Request was received at the ODOC ARA on May 5, 2014. The

Request was denied by the Director's Designee on May 5, 2014. Defendants' Motion (Doc. # 14), Ex. 5, at 31-34.

29. Plaintiff submitted a second Request to Director to Submit a Misconduct/Grievance Appeal Out of Time dated April 17, 2014. The Request was received by ODOC ARA on May 30, 2014. The Request was denied by Director's Designee Knutson on June 2, 2014. Defendants' Motion (Doc. # 14), Ex. 5, at 35. The return memorandum advised Plaintiff that the ruling of the ARA is final and the request to appeal the grievance out of time had been previously denied by ODOC ARA. Id. at 38.

Analysis

The undisputed facts show that Plaintiff submitted an RTS to Defendant Warden Wilkinson in October 2013. The RTS addressed both Plaintiff's medical needs claim asserted in ground five of the Complaint ("I need my medical as promised") and his excessive force claim in ground one ("I'm seeking compensation for my brain injury"), and the RTS described the use of force as well as the date of the use of force and the alleged promise of "surgery" for his injuries suffered in the use of force.

Although the RTS was clearly several months out-of-time under ODOC's grievance policy, Warden Wilkinson did not refuse to review the RTS on the basis of timeliness. Rather, Defendant Wilkinson responded with only a question concerning "[w]hat medical" Plaintiff was requesting. There is no evidence that Plaintiff received the "response," and, whether or not he received it, the question posed by Defendant Wilkinson did not respond to either of Plaintiff's requests.

13

Plaintiff next submitted a grievance, consistent with ODOC's grievance policy, to Defendant Wilkinson addressing only Defendant Wilkinson's failure to respond to the RTS and seeking a response to the RTS. This grievance was returned unanswered to Plaintiff because Plaintiff had failed to include the "database log number of the RTS you sent the Warden." It appears that Plaintiff's grievance concerning the lack of a response to his RTS did not strictly comply with ODOC policy for such a grievance, which at that time required "evidence of a copy of the log maintained by the law library supervisor that the [RTS] had been filed and no answer was received."[2] Unfortunately, because ODOC had transferred Plaintiff to a different correctional facility, in order to properly resubmit his grievance he had to contact DCF to obtain evidence showing his RTS had actually been filed at DCF.

Plaintiff was advised in a memorandum signed by Warden Wilkinson,[3] who must have known that he received and responded to Plaintiff's RTS, of the steps Plaintiff must take to

---

[2]ODOC OP-090124 (effective November 20, 2014), as found on ODOC's public website, now states that "[i]f there has been no response in 30 calendar days of submission [of an RTS to a prison official], the offender may file a grievance to the reviewing authority with a copy of the 'Request to Staff' attached to the grievance form. The grievance may assert only the issue of the lack of response to the 'Request to Staff.'" http://www.ok.gov/doc/documents/op090124.pdf (OP-090124, § IV(10)( eff. Nov. 20, 2014).

[3]The signatures on both Warden Wilkinson's response to the October 15, 2013 RTS and on the "grievance returned unanswered" memorandum dated December 16, 2013, appear to be the same, and the "grievance returned unanswered" memorandum states that it is "FROM:" Warden Wilkinson himself. Defendants assert that it was DCF grievance coordinator Underwood who returned Plaintiff's unanswered grievance and advised him of the steps to follow in resubmitting his grievance. Defendants have submitted an affidavit of Ms. Underwood in which she avers that she "provided inmate Wilson specific instructions as to how to correct and resubmit his grievance." Defendants' Motion (Doc. # 14), Ex. 3, at 2. However, the signature on this memorandum appears to be that of Warden Wilkinson and Ms. Underwood did not sign the memorandum.

properly resubmit his grievance concerning the lack of a response to his RTS. Plaintiff was advised: "You did not provide proof that a RTS was sent to Warden Wilkinson. You need to send a RTS to Tara Morgan, Admin Clerk and ask her for the RTS database log number of the RTS you sent the Warden. Then you can file a grievance asking for the RTS to Warden Wilkinson be answered." Defendants' Motion (Doc. # 14), Ex. 5, at 8.

Plaintiff received this memorandum on December 20, 2013, and, despite the fact he was now housed in another private prison, he was given only 10 days to resubmit his grievance "[w]ith the proof of RTS submission." Id. In an attempt to comply with this prohibitively-strict directive, Plaintiff submitted requests to the CCF law library clerk, grievance coordinator, and mailroom supervisor. In responding to his requests, these officials advised Plaintiff they did not have access to DCF's RTS "log" and that he must contact DCF administrative clerk Morgan to obtain the correct information to properly resubmit his grievance.

This procedural requirement was complicated and harsh due to Plaintiff's confinement in a different facility. Moreover, at that time ODOC policy required such RTS logs to be available at ALL facilities through a shared website. Defendants admit that ODOC OP-090124 stated during the relevant time period that the RTS Log maintained by the law library supervisors/designated staff "will be located on Share Point with accessibility to all facilities and administration." Defendants' Motion (Doc. # 14), Ex. 2, at 8 (ODOC OP-090124,

§IV(E).[4]

After unsuccessfully attempting to gain the proper RTS log information at CCF, where he was then confined, Plaintiff submitted an RTS to DCF's administrative clerk, Ms. Morgan. Ms. Morgan received Plaintiff's RTS on December 31, 2013. Ms. Morgan timely responded to the RTS on January 7, 2014, with the required information concerning Plaintiff's RTS to Defendant Wilkinson. However, aware that his 10-day time period was expiring, Plaintiff resubmitted his grievance to Defendant Wilkinson before he received Ms. Morgan's response. When he resubmitted his grievance to Warden Wilkinson, Plaintiff presented a copy of the original RTS directed to Warden Wilkinson, along with evidence that he had attempted to obtain the required log number from DCF and CCF officials, and explained that he had been unable to obtain the required information within the brief 10-day period that he was allowed to resubmit his grievance. Despite this explanation, the DCF Grievance Coordinator returned the resubmitted grievance unanswered because Plaintiff had not complied with ODOC's grievance policy.

There is no reasonable doubt that Plaintiff's ability to exhaust his available administrative remedies was hampered by his confinement in a different private prison

---

[4]According to Defendants, this provision has since been deleted from the policy. See Defendants' Response to Plaintiff's Cross-Motion for Summary Judgment (Doc. # 40), Ex. 11 (Langley Affidavit), at 1(in this affidavit Ms. Langley, a legal assistant with ODOC's Office of the General Counsel, avers that after this policy was enacted ODOC "recognized that the private prisons would be incapable of complying with this policy due to the fact that Share Point is an intranet website accessible to only ODOC staff. Staff at private prisons would not have access to this site." Ms. Langley avers that "[w]hen OP-090124 was updated, the section of the policy referenced above in paragraph 3 was removed." Id. at 2.

16

facility at the time he attempted to exhaust his remedies concerning his federal claims and by the overly-restrictive time limitation placed on his resubmission of his grievance to DCF Warden Wilkinson. Nor is there a reasonable doubt that Defendant Warden Wilkinson obstructed Plaintiff's efforts to exhaust his administrative remedies by failing to respond to Plaintiff's requests in his original RTS that briefly but adequately described his federal claims and that DCF officials obstructed Plaintiff's efforts to exhaust his administrative remedies by failing to provide the requisite information concerning his October 2013 RTS to CCF officials when they inquired about the RTS and whether Defendant Wilkinson had actually responded to the RTS. "[A]n exception to the PLRA's exhaustion requirement [exists] where a prison official renders administrative remedies effectively unavailable by improperly screening a prisoner's grievances. . . ." Sapp v. Kimbrell, 623 F.3d 813, 823 (9th Cir. 2010). Under these circumstances, Plaintiff has shown that the exhaustion requirement prescribed in 42 U.S.C. § 1997e(a) should be excused. In light of this finding, it is not necessary to review Plaintiff's remaining arguments in favor of his assertion that the exhaustion requirement should be excused.

In light of the pleadings and uncontroverted facts, there is an absence of a material factual dispute. Viewing the record and uncontroverted facts in the light most favorable to Plaintiff, Defendants' motion for summary judgment (Doc. # 14) on the issue of exhaustion of administrative remedies should be denied. Viewing the record and uncontroverted facts in the light most favorable to Defendants, Plaintiff's cross-motion for summary judgment (Doc. # 35) on the issue of exhaustion of administrative remedies should be granted.

RECOMMENDATION

Based on the foregoing findings, it is recommended that Defendants' Motion (Doc. # 14) construed as a motion for summary judgment on the issue of exhaustion of administrative remedies be DENIED and that Plaintiff's Cross-Motion for Summary Judgment (Doc. # 35) be GRANTED on the issue of exhaustion of administrative remedies. The parties are advised of their respective right to file an objection to this Second Supplemental Report and Recommendation with the Clerk of this Court by September 15th, 2015, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Second Supplemental Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Second Supplemental Report and Recommendation disposes of all of the issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this 26th day of August, 2015.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE